## HINES v. SMITH.

(Circuit Court of Appeals, Seventh Circuit. June 13, 1921. Petition for Rehearing Overruled August 19, 1921.)

No. 2940.

1. **Master and servant ⬳110—Bell "appurtenance" within federal Boiler Inspection Act.**

   A bell ringer is a "part" or an "appurtenance" of a "locomotive and tender," within the meaning of the Boiler Inspection Act (Comp. St. § 8631), as amended in 1915 (Comp. St. § 8639a), providing that railroads must equip locomotives and tenders with proper appurtenances.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Appurtenance—Appurtenant.]

2. **Master and servant ⬳110—Boiler Inspection Act liberally construed.**

   The amendment of March 4, 1915, § 1 (Comp. St. § 8639a), to Boiler Inspection Act, § 2 (Comp. St. § 8631), providing for equipment of locomotives with suitable boilers and appurtenances, should be liberally construed, and its obvious purpose effectuated.

3. **Pleading ⬳63—Not necessary to specifically refer to statute.**

   In an action under the Boiler Inspection Act (Comp. St. § 8631), as amended in 1915 (Comp. St. § 8639a), to recover for death of railroad employee, allegations charging defendant with failure to keep its bell ringer in a "proper condition and safe to operate in the service to which the same is put," etc., was sufficient, without referring to the statute, inasmuch as the facts as set forth disclosed a violation of it.

4. **Master and servant ⬳110—Hand operated bell insufficient under Boiler Inspection Act.**

   If a locomotive is equipped with an automatic bell ringer which is out of repair, hand operated bell cord cannot be accepted as a substitute under the Boiler Inspection Act (Comp. St. §§ 8631, 8639a), an act to promote the safety of employees, especially where the hand operated arrangement is utterly insufficient.

5. **Master and servant ⬳285(5)—Proximate cause of injury by locomotive with defective bell held for jury.**

   In an action for death of a fireman struck by locomotive while operating switches at roundhouse, whether defective automatic bell ringer was proximate cause of accident *held* for the jury.

6. **Appeal and error ⬳994(2), 996—Credibility of witnesses for jury.**

   Questions of credibility, as well as persuasiveness of facts and inferences, were for the jury.

In Error to the District Court of the United States for the Northern Division of the Southern District of Illinois.

Action by Ferne Smith, administratrix of the estate of Earl Glen Smith, deceased, against Walker D. Hines. Judgment for plaintiff, and defendant brings error. Affirmed.

Plaintiff brought this action against defendant (plaintiff in error here) to recover damages resulting from the death of Earl Smith while engaged as a fireman on the Cleveland, Cincinnati, Chicago & St.

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Louis Railroad. The trial resulted in a verdict and judgment in her favor for $17,500 and costs, from which judgment this writ of error is prosecuted. A statement of facts necessary to a proper consideration of the issue involved will appear in the opinion.

George B. Gillespie, of Springfield, Ill., for plaintiff in error.
Charles C. Spencer, of Chicago, Ill., for defendant in error.

Before BAKER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Affirmance depends upon the application of the Boiler Inspection Act to the facts disclosed upon the trial. Assignments of error directed to the rulings on evidence, the charge to the jury, and the refusal to give requested instructions, as well as the motions for nonsuit and directed verdict, all assume, in part at least, the nonapplication of this act. This Boiler Inspection Act, as originally enacted, provided:

"Sec. 2. From and after the first day of July, nineteen hundred and eleven, it shall be unlawful for any common carrier, its officers or agents, subject to this act to use any locomotive engine propelled by steam power in moving interstate or foreign traffic unless the boiler of said locomotive and appurtenances thereof are in proper condition and safe to operate in the service to which the same is put, that the same may be employed in the active service of such carrier in moving traffic without unnecessary peril to life or limb, and all boilers shall be inspected from time to time in accordance with the provisions of this act, and be able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for." U. S. Comp. St. § 8631.

This section was amended in 1915, section 1 of the amendment reading as follows:

"Section two of the act entitled 'An act to promote the safety of employees and travelers upon railroads by compelling common carriers engaged in interstate commerce to equip their locomotives with safe and suitable boilers and appurtenances thereto,' approved February seventeenth, nineteen hundred and eleven, shall apply to and include the entire locomotive and tender and all parts and appurtenances thereof." U. S. Comp. St. 8639a.

[1, 2] It is claimed on behalf of plaintiff, and evidence supports the contention, that the automatic bell ringer was out of order and would not ring on the night of the accident, and that it had been out of order for some time. In answer thereto, defendant asserts that this act does not apply to bell ringers, and that the declaration does not charge a violation thereof. With neither position can we agree. The amendment of 1915, we think, leaves no room for doubt. Certainly a bell ringer is a "part" or an "appurtenance" of a "locomotive and tender." While a liberal construction of this statute is not necessary to justify this conclusion, it is evident that the amendment should be liberally construed and its obvious purpose effectuated. Great Northern Ry. Co. v. Donaldson, 246 U. S. 121, 38 Sup. Ct. 230, 62 L. Ed. 616, Ann. Cas. 1918C, 581.

[3] As to the allegations set forth in the declaration we have no hesitancy in saying that count 5 charges the defendant with failure to keep its bell ringer in a "proper condition and safe to operate in the

service to which the same is put," etc. It was unnecessary to specifically refer to the statute, inasmuch as the facts as set forth disclosed a violation of it. Grand Trunk Ry. v. Lindsay, 233 U. S. 42, 34 Sup. Ct. 581, 58 L. Ed. 838, Ann. Cas. 1914C, 168.

This being our conclusion in respect to the application of this statute, the proposed instructions, dealing with assumption of risk and contributory negligence, rejected by the court, need not be discussed. Admittedly they were properly refused if liability could be predicated upon defendant's failure to comply with the provisions of the Boiler Inspection Act.

True, there were counts in the declaration to which assumption of risk and contributory negligence were defenses. But the proposed instructions, the refusal of which is assigned as error, were intended to commit the court and the jury to a repudiation of the count or counts that predicated liability upon the defective bell ringer. In fact, as the trial concluded, it became evident that defendant's liability turned almost solely upon its failure to provide its engine with a workable automatic bell ringer on the night in question.

Likewise rulings upon evidence dealing with the bell ringer and its failure to work need not be separately considered, for the basis of each exception was the nonapplication of the statute to the facts disclosed.

But conceding the Boiler Inspection Act applied to and covered bell ringers, counsel insist that no actionable negligence is disclosed by the evidence, and therefore its motions, timely made, to take the case from the jury, were erroneously denied.

[4] In considering this contention, an apparently erroneous impression may be first corrected. We have no hesitancy in saying that the hand operated bell cord cannot be accepted as a substitute for an automatic bell ringer. If the engine is equipped with an automatic ringer which is out of repair, we fail to see how some other means, not automatic, will meet the requirements of the statute.

Furthermore, the facts in this case show the utter insufficiency of the hand operated arrangement, constructed for emergency use by a fireman and placed on the fireman's side of the engine cab. The fireman was on the ground attending to switches. It was in the night, and the engineer's undivided attention was, or should have been, directed to the operation of the engine, which necessitated his keeping a lookout for signals. He neither did, nor could with dependability, operate the bell by a cord so placed as to be operatable by a fireman.

[5] Moreover, defendant's insistent urge that such defective bell ringer was not actionable, that its failure to ring was not the proximate cause of the injury, must be rejected. While facts are recited tending to support such a conclusion, they are by no means conclusive, nor in all respects undisputed. This issue may well be said to be primarily a jury question. And while the facts may, in certain cases, be so clear and undisputed, so free from conflicting inferences, as to not only justify, but demand, the court's favorable ruling on defendant's motion for a directed verdict, that situation does not exist here. The engine was being taken by the engineer and the fireman from the roundhouse to the main track. It was in the nighttime, and numerous engines were

in the yard. The fireman was required to perform the duties commonly performed by a switchman. He had to "throw" three switches, or at least examine them and determine whether they were properly "lined up." The first one was on the right, the other two on the left side, of the track. The engineer was on the right side of the cab, and he was advised by deceased that the first switch was "lined up." Immediately thereafter, deceased crossed the track, disappearing from the engineer's range of vision, to "line up" the other switches. The engineer gave his signal, indicating the engine was about to move. He also "turned on" the automatic bell ringer, which responded a few times and then stopped. There was evidence tending to show that the automatic bell ringer was constantly rung by engineers in this yard when engines were being moved. Under these circumstances, may not a jury well have said that the failure of the bell to ring and thus warn deceased of the approach of the engine, and of its nearness, was the proximate cause of the injury? We think so. Milwaukee, etc., Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256. And it was the jury's duty, not the court's, to determine the question, there being some evidence upon which it could base a finding.

[6] True, it was the duty of the servant to avoid injury, to place himself outside the field of danger, avoid the on-coming engine, assuming he knew it was constantly in motion. But we are here not considering a question of contributory negligence. Instead, we must determine whether any of the facts and circumstances which the jury might have accepted as true pointed to the absence of a working automatic bell ringer as the proximate cause of the fatal injuries. It is unnecessary to discuss the testimony further. Questions of credibility, as well as persuasiveness of facts and inferences, were for the jury.

The judgment is affirmed.