SMITH *v.* SOUTHERN PACIFIC CO.

No. 2797

May 25, 1929.        277 P. 609.

*Brown & Belford,* for Appellant:

*A. Grant Miller, Edward C. Short,* and *Green & Lunsford,* for Respondent:

## OPINION

By the Court, COLEMAN, J.:

This action was brought to recover damages for injuries sustained by Newton N. Smith, which resulted in his death.

Judgment was rendered in favor of the plaintiff. The appeal is from an order denying a motion for a new trial. We will refer to the parties as plaintiff and defendant, and where necessary to allude to the deceased, we will do so as Smith.

On October 5, 1924, at Hazen, a point about 135 miles east of Reno, where the defendant maintains two side-tracks in addition to its main line, Smith received the injuries resulting in his death. He was in the employ of the defendant on that day as head brakeman on a train traveling westward, which was on the south siding at the time of the injury, awaiting the passing eastward of a train designated "First 272." There

was on the north siding shortly before and at the time of the injury a train headed eastward. While train "First 272" was approaching the depot, Smith and others of the crew of his train were in the depot.

As train "First 272" approached Hazen, it gave the signal for orders, and a stop sign was given by the telegraph operator. It was the duty of this train to come to a full stop before reaching the switch about a mile easterly from the depot, unless it received a clearance order.

As train "First 272" was pulling in at the depot, the train on the north siding, also headed eastward, began to pull out at the switch mentioned.

As train "First 272" approached the depot it slowed down to 15 miles per hour. The rule of the defendant requires that the clearance card be delivered by the telegraph operator if the train is in the vicinity of the depot. The train in question passed in the vicinity of the depot, and a clearance card was to be delivered to the train crew, but the operator, instead of delivering it himself, requested Smith to do so. To make delivery of the card, it is attached to a hoop held up by a long stem, so that the fireman can catch it on his arm. On this occasion the fireman failed to catch the hoop, and Smith endeavored to jump on the fourth car back of the tender, evidently with the view of delivering the card, missed his footing, fell, and received the injuries in question. Under the rules of the defendant, when the card was not delivered it is the duty of the train to stop and have a trainman go back and get the order.

The attorneys for the plaintiff concede that if this suit were brought under the common law there could be no recovery, but it is claimed that it was brought pursuant to the Federal Employers' Liability Act (45 USCA, secs. 51–59) and that the judgment must be sustained. This contention is based upon the theory that the telegraph operator at Hazen was negligent in requesting Smith to deliver the order, that such negligence must be imputed to the defendant, that it was the

proximate cause of the injury, and that Smith's negligence, if there was any, is no defense under the act in question. It is also said that the question of negligence was one solely for the jury.

The defendant contends, on the other hand, that Smith's injuries were received solely as the result of his own negligence, and hence that no recovery can be had.

Other questions are discussed, but we do not deem it necessary to consider them.

In addition to the general verdict in favor of plaintiff, the jury made answer to several specific questions. One of such answers was to the effect that the injury received by Smith was due to the negligence of Lusk, the operator. In this connection, counsel for the plaintiff, in support of their contention that Lusk's request of Smith to deliver the hoop order constituted actionable negligence of the defendant, say that on that morning Lusk was the defendant company.

While we do not concede that a telegraph operator, an agent of limited authority, can be said to be the company, yet if such were the fact it would be necessary to reverse the order appealed from. There can be no recovery in this case unless the negligence of the defendant was at least the concurring cause of the injury.

Let us inquire if Lusk was, as counsel say, the company on the morning the injury was sustained by Smith. The company, in the operation of its railroad system, had unlimited authority. It could have ordered train "First 272," which was a train transporting fruit to the east, back to California; it could have ordered the freight train, on which Smith was head brakeman and which was traveling westward, back to Ogden; it could have ordered dozens of trains to have pulled on the sidings and the track at Hazen and remain there for days. It could have ordered dozens of its engines into a roundhouse to be scrapped. It might have ordered scores of other things which would seem to the average man unreasonable and a ruthless destruction of property or waste of time. Can it be said that Lusk had

authority to do any of these things? If not, the contention that he was the company is without the semblance of foundation. We know, and every one who knows anything of the law of agency knows, that a great railroad system must have agents and employees to carry on its operations, and we know that each agent is confined in his duties to the scope of his employment, and to the particular work which he is employed to do. At least such an agent's authority does not extend beyond the point of his apparent authority unless greater authority is shown. If this were not true, and if Lusk was the company, he had authority to direct the engineer to come to the depot at Hazen and act as the telegraph operator and he take the engineer's job. But it takes no very smart man to know that the engineer would have ignored any such order. What we have said makes the contention that Lusk was the company so groundless that it would seem to be a waste of time to even try to convince a layman, to say nothing of a lawyer, of the weakness of the contention that Lusk was the company. Lusk was a mere agent of the company, an agent of limited authority. He could deliver orders to a train crew, received from the train dispatcher, but he had no personal control over a train crew or any member of it, any more than he had over any person who might have been waiting in the depot to catch a train. And as a railroad man Smith was chargeable with knowledge of this. Smith's action in undertaking to deliver the clearance order, in view of this fact, was a volunteer service, an act of friendship for Lusk, and not an act in the course of his employment, for which the defendant is liable. But even if Lusk were such an agent as was authorized to direct Smith to deliver the clearance order, we do not think the defendant is liable, for the reason that in no event was there occasion for Smith to deliver the order except in the manner in which the defendant authorized such orders to be delivered while the train was in motion, namely, by the use of the hoop. The hoop

was furnished to be used for that purpose, and several experienced trainmen testified that they had never known an attempt having been made to deliver an order as Smith did. It is not claimed that Lusk directed the delivery except by the use of the hoop. While it does not appear that the defendant had a rule governing the method of delivery, the furnishing of the hoop for that purpose, plus the evidence as to the well-recognized and long-established customary method of delivery, of which Smith, an experienced trainman, must have had knowledge, is as effective as would have been a rule itself.

In Chicago Great Western R. Co. v. Egan (C. C. A.) 159 F. 40, the court held that, in an action for damages for negligence, evidence of the ordinary practice and of the uniform custom, if any, of persons in the performance of similar acts like those which are alleged to have been negligently done, presents the correct standard for the determination of the issue whether or not there was negligence. This is a well-recognized rule. Lake v. Shenango Furnace Co. (C. C. A.) 160 F. 887; Waters Pierce Oil Co. v. Deselms, 212 U. S. 159, 29 S. Ct. 270, 53 L. Ed. 453. The cases mentioned cite numerous authorities supporting the rule.

■ In resorting to a risky and obviously dangerous method of delivering an order, and contrary to the well-established method — one not approved by the defendant and never theretofore resorted to — Smith was guilty of negligence which was the proximate cause of his injuries, for if we assume that Lusk, in requesting Smith to deliver the order, was such an agent as could bind the defendant, and that he was negligent in making the request of Smith, such negligence could continue only up to and including the attempt to deliver the order by the use of the hoop, and no further.

In this situation there was no contributory negligence, no concurring nor comparative negligence, resulting in the injury, because the defendant's negligence, if any, ceased to enter into the situation when Smith went

beyond the customary method of making delivery of the order. He then became a volunteer and his own negligence was the sole cause of the injury.

Counsel for plaintiff invite our attention to the case of Grand Trunk Western R. Co. v. Lindsay, 233 U. S. 42, 34 S. Ct. 581, 58 L. Ed. 838, and says it lays down the law of the instant case. They quote therefrom, inter alia, as follows: "It is only when plaintiff's act is the sole cause—when defendant's act was no part of the causation — that defendant is free from liability under the act."

We agree with counsel that the case mentioned states the law of the case in hand, and we think that by an application of the law thus declared there is no escape from a reversal of the order appealed from.

The facts of the case mentioned present a very different situation from that presented for our consideration. Let us distinguish. In that case the proximate cause of the injury was the bad condition of the automatic coupler, a condition which existed right up to and including the moment the injury was received; hence a recovery was proper though the negligence of the plaintiff was a concurring cause. In the instant case, as we have seen, the act of Lusk was not the proximate cause of the injury; hence there could be no liability on the part of the defendant.

■ We think perhaps we can make more clear our view by using the expression used in Weck v. Reno Traction Co., 38 Nev. 285, 149 P. 65, when we alluded to the fact that the negligence of the plaintiff "stopped." In the instant case, assuming that the defendant was guilty of negligence when Lusk requested Smith to deliver the hoop order, such negligence "stopped" when Smith had made the attempt to deliver the order by the use of the hoop, and whatever Smith did, after that attempt was made, was a voluntary act on his part, and the negligence of the defendant having stopped before Smith received the injury, the request of Lusk to deliver the order was no part of the causation, and hence the voluntary act of Smith was the sole cause of the injury.

This being true, under the authority of the case cited by counsel, there can be no recovery.

The order appealed from is reversed.

ON PETITION FOR REHEARING

August 6, 1929.

*Per Curiam:*

Rehearing denied.