The **UNITED STATES** of America,
Plaintiff-Appellee,

v.

The **AKRON, CANTON & YOUNGS-
TOWN RAILROAD COMPANY,**
Defendant-Appellant.

No. 17587.

United States Court of Appeals
Sixth Circuit.

July 16, 1968.

Alan P. Buchmann, Cleveland, Ohio (Andrew P. Martin, Alan P. Buchmann, Squire, Sanders & Dempsey, Cleveland, Ohio, on the brief), for appellant.

John G. Mattimoe, Toledo, Ohio (Merle M. McCurdy, U. S. Atty., John G. Mattimore, Asst. U. S. Atty., Toledo, Ohio, Loren G. Windom, Regional Atty., Interstate Commerce Commission, on the brief), for appellee.

Before O'SULLIVAN and McCREE, Circuit Judges, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

The Akron, Canton & Youngstown Railroad Company was convicted in the District Court of violation of the Safety Appliance Acts, Title 45 U.S.C.A. Sec. 1 et seq., and appeals.

The Government's complaint sets forth that the Railroad Company received certain defective freight cars in interchange from other railroads; and that it hauled such defective freight cars from the point of receipt to another point for inspection and repair.

It is the claim of the Government that a defective car, received in interchange from another railroad, cannot be hauled by the receiving railroad for any purpose. It is maintained that such defective car must be either repaired or rejected at the interchange point. See Baltimore & O.S.W.R. Co. v. United States, 242 F. 420 (C.C.A. 6). The penalty and exception section of the governing statute is Title 45 U.S.C.A. Sec. 13, in which it is provided:

"Any common carrier subject to sections 11–16 of this title using, hauling, or permitting to be used or hauled on its line, any car subject to the requirements of said sections not equipped as provided in said sections, shall be liable to a penalty of $250 for each and every such violation, to be recovered as provided in section 6 of this title: *Provided,* That where any car shall have been properly equipped, as provided in sections 1–16 of this title, and such equipment shall have become defective or insecure *while such car was being used by such carrier upon its line of railroad,* such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, without liability for the penalties imposed by this section or section 6 of this title, if such movement is necessary to make such repairs and such repairs cannot be made except at such repair point; * * *." (Emphasis supplied.)

The applicable regulations are found in 49 C.F.R., Sections 132.10–132.17, under the heading of Rules for Inspection, Testing and Maintenance of Air Brake Equipment.

Section 132.11(c) provides:

"(c) Each train must have the air brakes in effective operating condition * * *. When piston travel is in excess of 10 inches, the air brakes cannot be considered in effective operating condition."

The Stipulation of Facts filed with the District Court disclosed that the Railroad Company hauled three cars from various interchange points to Akron, Ohio, where excessive piston travel was discovered. The Government contends that, from these facts alone, three violations of the safety law were proved.

The Railroad Company contends that the proper construction of the Interstate Commerce Commission order requires consideration of Sections 132.12 and 132.-13(d).

Section 132.12 prescribes tests and inspections to be conducted under various cricumstances. Section 132.13(d) (2) (ii) permits other procedures for performing the Section 132.12 tests and inspections when cars are picked up en route. It is claimed that they may be performed immediately, or postponed until the next terminal. Defendant Railroad Company pursued the latter procedure, and submits that it has complied with the statutory prescriptions.

The District Court, in construing the provision in question, stated that he deemed it significant that not only did Section 132.12 prescribe several air brake tests (see e.g. 132.12(a)) but also set forth the standards to be applied in performing those tests, with the exception of the piston travel tests; and the District Court further stated that the applicable standard for the piston travel, i. e. 10 inches, is set forth separately in Section 132.11(c). Moreover, the language is mandatory:

"Each train must have the air brakes in effective operating condition."

■ We have, as did the District Court, carefully reviewed the five printed pages containing Sections 132.12 and 132.13(d) (2) (ii) and arrive at the conclusion that these provisions are subordinate to the absolute duty imposed by the Safety Appliance Acts on every railroad to comply with each and every provision and related orders issued by the Interstate Commerce Commission, and, especially, the provisions of Section 132.11 (c), of the mandatory character we have above mentioned, and that when piston travel is in excess of 10 inches, the air

brakes cannot be considered in effective operating condition.

The freight cars in question had defective brakes in that the travel of the air brake pistons exceeded 10 inches on each car.

In a joint petition filed by the Norfolk and Western Railway Company and the Lehigh Valley Railroad Company, and a petition filed by the Alton and Southern Railroad in 1964, all seeking a declaratory order under the Administrative Procedure Act as to the meaning and application of 49 C.F.R. 132.12, the Interstate Commerce Commission ruling in regard to such provision, stated:

"It requires each railroad to discover and repair or reject cars received from other carriers in defective condition since a carrier may not lawfully haul or use a car with a defective safety appliance, including power brakes, on its line of railroad when the defect had occurred on the line of another carrier." 30 Federal Register 4063.

The entire ruling of the Interstate Commerce Commission above referred to is set forth in the accompanying footnote.[1]

I. TITLE 49 — TRANSPORTATION
Chapter I—Interstate Commerce Commission
Subchapter A—General Rules and Regulations
[No. 34531]
PART 132—POWER BRAKES AND DRAWBARS (RAILROAD)
Initial Terminal Road Train Air Brake Tests; Interpretations

At a General Session of the Interstate Commerce Commission held at its office in Washington, D.C., on the 16th day of March A.D. 1965.

It appearing, that by joint petition filed December 10, 1964, the Norfolk & Western Railway Co., and the Lehigh Valley Railroad Co., and by a petition filed December 1, 1964, the Alton & Southern Railroad seek a declaratory order under section 5(d) of the Administrative Procedure Act (45 U.S.C. sec. 1004) so as to remove alleged uncertainties as to the meaning and application of 49 CFR 132.12, the pertinent provisions of which are as follows:

§ 132.12 *Initial terminal road train air brake tests.* All trains must be given inspection and test as specified by paragraphs (a) to (h) of this section at points: (1) Where a train is originally made up (Initial Terminal); (2) Where train consist is changed other than by adding or removing a solid block of cars and train brake system remains charged; (3) Where train is received in interchange. * * *

And it further appearing, that petitioners request said declaratory order to provide definitive answers to a number of petitioners' questions hereinafter referred to, and that a reply to said petition was filed February 23, 1965, by Railway Labor Executives' Association.

*It is ordered,* That the following answers or interpretations in response to questions propounded by petitioners be, and they are hereby, adopted in the manner and to the extent set forth herein as follows:

*Question.* When two railroads join in through train operation without change of power, caboose, or other train consist at their boundary, changing only crews at said boundary, is the boundary the place where the train is received in interchange under 49 CFR 132.12?

*Answer.* The boundary between carriers is the place where the train is received in interchange under 49 CFR 132.12 because at that point the use or haul on the line of one carrier ceases and the use or haul on the line of railroad of the other carrier commences.

*Question.* Under such circumstances, may the parties agree that the train is received in interchange under 49 CFR 132.12 at some location other than the boundary, provided it is within 500 miles of an inspection point?

*Answer.* No. The parties may not nullify any part of the Safety Appliance Acts by agreement. Any such agreement in conflict with the requirements of such Acts is without effect.

*Question.* Under such circumstances, what is the authority of the Commission to determine where a train is received in interchange under 49 CFR 132.12 if the parties should agree otherwise?

*Answer.* The Safety Appliance Acts (45 USC 1–16) is the Interstate Commerce Commission's authority to determine where a train is received in inter-

Appellant Railroad Company stresses 49 C.F.R. Sections 132.12 and 132.13(d) (2) (ii). However, while these sections prescribe air brake tests, they do not provide for *the piston travel test* in Section 132.11(c), *and that each train must have the air brakes conform thereto.* This is the controlling consideration in the case before us; and the air brakes did not conform to this provision.

■■ Plaintiff appellee submits that the Safety Appliance Acts place an absolute duty on the Railroad to comply literally with each and every provision and related orders issued by the Interstate Commerce Commission. This contention is supported by the authorities.

United States v. Atchison, T. & S. F. Ry. Co., 156 F.2d 457 (C.C.A. 9); United States v. Missouri-Kansas-Texas Railroad Co., 273 F.2d 474 (C.A. 10); United States v. Alton and Southern Railroad, 190 F.Supp. 166 (E.D.Ill.). The Safety Appliance Acts and Commission Orders adopted pursuant thereto must be given a liberal construction to evaluate their humanitarian purpose. Illinois Central R. R. Co. v. Williams, 242 U.S. 462, 37 S.Ct. 128, 61 L.Ed. 437; New York Central R. R. Co. v. United States, 265 U.S. 41, 44 S.Ct. 436, 68 L.Ed. 892; United States v. State of California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567; Lilly v. Grand Trunk Western R. Co., 317 U.S. 481, 487, 488, 63 S.Ct. 347, 87 L.Ed. 411;

change under 49 CFR 132.12. The clear intent and purpose of 49 CFR 132.12 is to assure full compliance with the power brake requirements of the Safety Appliance Acts. It requires each railroad to discover and repair or reject cars received from other carriers in defective condition, since a carrier may not lawfully haul or use a car with a defective safety appliance, including power brakes, on its line of railroad when the defect had occurred on the line of another carrier.

*Question.* Under such circumstances, are not the time and place where the parties agree to conduct the initial test and the car inspector accepts the cars the time and place where the train is received in interchange under 49 CFR 132.12?

*Answer.* No. The time and place of interchange under 49 CFR 132.12 is when a train leaves the line of railroad of one carrier and enters upon the line of another carrier.

*Question.* Is not present 49 CFR 132.12 indefinite and without a reasonable standard as to the definition of the clause "where train is received in interchange"?

*Answer.* No. The term "interchange" is not indefinite in the light of the intent and purpose of 49 CFR 132.12.

*Question.* Does not 49 CFR 132.13 in its title "Road Train and Intermediate Terminal Train Air Brake Tests" fully authorize the intermediate type test by virtue of its specific reference to road trains?

*Answer.* No. 49 CFR 132.12 specifically refers to all trains. 49 CFR 132.13 merely provides certain additional road train and intermediate terminal train air brake tests required under specific conditions enumerated therein.

*Question.* Does the Commission have the authority and duty under 45 U.S.C. 9 to rescind or change any provisions of 49 CFR 132.12 which has no relation to safety?

*Answer.* The Power or Train Brakes Safety Appliance Act of 1958 specifically provides that the Interstate Commerce Commission has authority to change the rules, standards and instructions referred to therein only when such change is promulgated for the sole purpose of achieving safety.

Notice of this order shall be given to the general public by depositing a copy thereof in the Office of the Secretary of the Interstate Commerce Commission, at Washington, D.C., and by filing it with the Director, Office of the Federal Register.

By the Commission.

[SEAL]

BERTHA F. ARMES,
*Acting Secretary.*

[F.R. Doc. 65-3144; Filed, Mar. 26, 1965; 8:48 a. m.]

Tiller v. Atlantic Coast Line R. Co., 323 U.S. 574, 577, 578, 65 S.Ct. 421, 89 L.Ed. 465; United States v. Seaboard Air Line R. Co., 361 U.S. 78, 80 S.Ct. 12, 4 L.Ed.2d 25; United States v. Atchison, T. & S. F. Ry. Co., 156 F.2d 457, 458, 459 (C.C.A. 9); Carbon County Railway Company v. United States, 309 F.2d 938–941 (C.A. 10); United States v. Southern Railway Company, 341 F.2d 669, 672 (C.A. 4).

Other contentions advanced on appeal are unnecessary to discuss.

In consideration of the foregoing, the judgment of the District Court is affirmed.